## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 22 2019, 9:26 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James D. Crum
Coots Henke & Wheeler, PC
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Zachary Joseph Jansen,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

February 22, 2019

Court of Appeals Case No.
18A-CR-2466

Appeal from the Hamilton
Superior Court

The Honorable Gail Z. Bardach,
Judge

Trial Court Cause No.
29D06-1802-F6-1182

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Zachary Joseph Jansen (Jansen), appeals his conviction for sexual battery, a Level 6 felony, Ind. Code § 35-42-4-8(a)(1)(A).

We affirm.

# ISSUE

Jansen raises one issue on appeal, which we restate as: Whether the State presented sufficient evidence beyond a reasonable doubt to support his conviction for sexual battery.

# FACTS AND PROCEDURAL HISTORY

In August 2017, 21-year-old Jansen responded to an on-line public post by 18-year-old H.P. posted on the social networking application, Whisper. H.P.'s public post stated, "I'm really hiiiiiigh," followed by several laughing emojis, and pasted on a background of a couple engaged in a kiss. (State's Exh. 2). Jansen and H.P. entered into conversation and exchanged text messages via Snapchat and Kik. The conversations were "at times flirtatious in nature[.]" (Transcript Vol. II, p. 10).

A couple of days later, on August 11, 2017, H.P. agreed to meet Jansen in person. H.P. messaged Jansen her father's address in Irvington and told him that it was about a 30-minute drive from Fishers. She informed him "Umm I haven't decided if I'm gonna fuck you yet tho if that impacts your decision" to drive that far. (State's Exh. 4). Jansen responded, "Im just looking to chill" to

which H.P. replied, "Cool. Yeah come get me lol." (State's Exh. 4). Jansen picked H.P. up around 1:00 a.m., drove her to Fishers, and parked the car towards the back in a Walmart parking lot.

[6] As soon as Jansen "turned the car off, he turn[ed] and just immediately start[ed] kissing" H.P. (Tr. p. 13). H.P. felt "uncomfortable" and just sat there, while Jansen kissed her and touched her breasts and buttocks. (Tr. p. 13). "Multiple times" she asked if they "could just sit there" and she tried to lean her body away from him. (Tr. p. 13). At one point, Jansen asked H.P. if she wanted to smoke "weed;" she agreed because it meant "he was going to stop touching [her]." (Tr. p. 14). However, before they smoked, Jansen wanted "to show [H.P.] his penis." (Tr. p. 14). When H.P. declined, Jansen insisted and took off his pants and underwear. He "explained that his penis was not erect and that it's bigger when it is erect, and then he began masturbating." (Tr. p. 14). After he finished, Jansen and H.P. smoked some marijuana in the car.

[7] When H.P. informed Jansen that she wanted to go and that she was hungry, Jansen offered to purchase her some food and then take her home. Jansen ordered some fries from McDonald's, and when they left McDonald's, H.P. realized that he was not driving towards Irvington. Despite her repeated statements that she wanted to go home, Jansen drove H.P. to his parents' house instead.

[8] When they arrived, Jansen and H.P. went upstairs to his bedroom. When H.P. insisted that she wanted to go home, Jansen replied that he would take her

home, but first he wanted to give her a back massage. He took off H.P.'s shirt and bra. She laid down on his bed and he gave her a back massage. She told him that she "didn't like it." (Tr. p. 17). Jansen continued to give her a back massage and "then he laid down in the bed" and started rubbing his hands over her breasts and her vagina over her shorts. (Tr. p. 17). He tried to take H.P.'s shorts off, but H.P. told him "no" and moved his hand away. (Tr. p. 17). Jansen "started to take off his belt and his pants, and [H.P.] broke down and cried[.]" (Tr. p. 17). She just kept repeating that she wanted to go home. Finally, Jansen agreed and drove her home.

[9] The next day, the following text messages were exchanged between H.P. and Jansen:

> H.P.: Why didn't you take me home when I asked?
>
> Jansen: I thought you were just over reacting cause you were high.
>
> H.P.: Is that why you kept putting your hand down my shorts
>
> Jansen: Never went down
>
> H.P.: Fucking knew it
> You piece of shit
> Don't fucking deny it
>
> Jansen: You moved my hand away
>
> H.P.: Then you moved it back
> Again
> And again
> And again
>
> Jansen: Thought you were just waiting to get comftable [sic]

with me.
You told me "im not sure yet" not "im not down at all"

H.P.: Before and then in the car I said I don't want to.

Jansen: Well that's where my mind was. I got you food and smoked u up. We don't need to be friends, just take care of your self.

(State's Exh. 4). H.P. contacted the police the same day.

On February 14, 2018, the State filed an Information, charging Jansen with two Counts of Level 6 felony sexual battery. On August 21, 2018, a bench trial was conducted, at the end of which the trial court found Jansen guilty of one Count of sexual battery (bedroom incident) and not guilty of the other (Walmart parking incident). On September 28, 2018, the trial court sentenced Jansen to 545 days in the Indiana Department of Correction, with 541 days suspended to probation.

Jansen now appeals. Additional facts will be provided if necessary.

# DISCUSSION AND DECISION

Jansen contends that the State failed to present sufficient evidence beyond a reasonable doubt to support his conviction for sexual battery. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the judgment. *McGowan v. State*, 89 N.E.3d 424, 427 (Ind. Ct. App. 2017). We do not assess witness credibility or reweigh the evidence. *Id*. We consider conflicting evidence most favorably to the trial court's ruling. *Id*. We affirm the conviction

unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* The evidence is sufficient if an inference may reasonably be drawn from it to support the judgment. *Id.*

[13]     In order to convict Jansen, the State was required to establish beyond a reasonable doubt that Jansen, with the intent to arouse or satisfy his own sexual desires or the sexual desires of H.P., touched H.P. when she was compelled to submit to the touching by force or the imminent threat of force. *See* I.C. § 35-42-4-8(a)(1)(A). In his appellate brief, Jansen concedes that the evidence is sufficient to show that the touching occurred with the intent to arouse or satisfy his own sexual desires; however, he challenges the trial court's conclusion that there was sufficient evidence to prove that H.P. was compelled to submit to the touching by force or the imminent threat of force.

[14]     In evaluating the compelling prong of the charge, "it is the victim's perspective, not the assailant's, from which the presence or absence of forceful compulsion is to be determined. This is a subjective test that looks to the victim's perception of the circumstances surrounding the incident in question." *McCarter v. State*, 961 N.E.2d 43, 46 (Ind. Ct. App. 2012), *trans. denied*. Evidence that a victim did not voluntarily consent to a touching does not, in itself, support the conclusion that the defendant compelled the victim to submit to the touching by force or threat of force. *Id.* "Not all touchings intended to arouse or satisfy sexual desires constitute sexual battery; only those in which the person touched is compelled to submit by force or imminent threat of force"

satisfy the charge. *Id.* Furthermore, "the force need not be physical or violent, but may be implied from the circumstances." *Chatham v. State*, 845 N.E.2d 203, 206 (Ind. Ct. App. 2006).

[15]  In support of his argument that he did not compel H.P. by force or threat of force, Jansen relies on a line of case law indicating that even though force may have been used, the victim was not compelled to submit to it. In *Scott-Gordon v. State*, 579 N.E.2d 602, 604 (Ind. 1991), the defendant was charged with sexual battery for grabbing an employee's buttocks, after which the employee punched the defendant in the eye. Our supreme court concluded that the employee's immediate reaction demonstrated that he did not voluntarily consent to the touching by the defendant, but the court found no evidence to support the conclusion that the defendant compelled the employee to submit to the touching by force or imminent threat of force. *Id.* The court noted that the defendant made no threats to the employee and that the employee was not afraid of the defendant. *Id.* Accordingly, the court reversed the conviction. *See also Frazier v. State*, 988 N.E.2d 1257, 1261 (Ind. Ct. App. 2013) (reversing one of Frazier's convictions for sexual battery where the defendant grabbed S.R.'s shoulder and ground his pelvis against her buttocks, and holding that, while some level of force facilitated the touching, the evidence did not show the victim was compelled to submit to the touching by force or threat of force); *McCarter*, 961 N.E.2d at 47 (noting that McCarter withdrew his hands after D.H. told him to "get off of [her]" and holding that, while the touching may have occurred with some force, the evidence did not show that D.H. was

compelled to submit to it by force or threat of force); *Chatham*, 845 N.E.2d at 205-08 (noting that Chatham came up behind [Kerns] and grabbed up with [his] hand in between [her] thighs and [her] crotch as far as [he] could," and holding that Kerns did not have the opportunity to grant or deny consent to the touching and that the evidence was insufficient to show that Chatham compelled Kerns to submit to the touching by force or imminent threat of force, reversing his sexual battery conviction).

[16] However, we hasten to point out that in *Scott-Gordon*, the supreme court also discussed the sufficiency of the evidence supporting two other sexual battery allegations. *Scott-Gordon*, 579 N.E.2d at 602. The facts relating to Count II alleged that Scott-Gordon told C.M., a passenger in his car, that he was horny and asked C.M. to masturbate him in exchange for money. *Id*. at 603. When C.M. refused, Scott-Gordon unzipped his own pants, took C.M.'s hand and stuck C.M.'s hand on Scott-Gordon's penis. *Id*. at 603-04. C.M. pulled his hand away, but Scott-Gordon grabbed it and placed it back on his penis. *Id*. at 604. This scenario occurred three or four times, despite C.M.'s repeated attempts to remove his hand from Scott-Gordon's penis. *Id*. The court found that these facts supported one charge of sexual battery against Scott-Gordon. *Id*.

[17] Mindful that "the force need not be physical or violent, but may be implied from the circumstances," we turn to *Bailey v. State*, 764 N.E.2d 728 (Ind. Ct. App. 2002), *trans. denied*. *See Chatham*, 845 N.E.2d at 206. In *Bailey*, this court noted that Adams had two unsolicited encounters with Bailey prior to the

incident in question where Bailey grabbed her buttocks. *Bailey*, 764 N.E.2d at 731. During one of those encounters Bailey approached Adams from behind and asked her if he could come home with her and pull down her pants. *Id*. Adams responded to this crude proposition by telling Bailey to leave her alone and by hurrying home. *Id*. In evaluating these circumstances, we found it noteworthy that because Adams hurried home after one of the previous encounters, "one could reasonably infer from [it] that Adams had reason to fear Bailey." *Id*. at 732. This court concluded that despite Adams's prior refusal of Bailey's advances and her previously hurried retreat home, Bailey continued to grab Adams' buttocks, thereby forcing her to submit to the touching. *Id*.

[18] Viewing the circumstances surrounding the incident from H.P.'s perspective, it is clear that H.P. did not voluntarily submit to Jansen's advances. When H.P. entered Jansen's bedroom, she had already repeatedly informed him that she wanted to be taken home and that his persistent advances were unwelcome. However, with no other mode of transportation available to her besides Jansen's vehicle, she was taken to Jansen's parents' home against her wishes. There, despite several requests to be taken home, Jansen advised her that he would drive her only after he gave her a back massage. It is reasonable to infer that Jansen leveraged the fact that he was her only mean of transportation and, seeing no other option of getting home, H.P. was psychologically forced into taking off her shirt and bra and submitting to a back massage—and further escalations of having her breasts groped and vagina rubbed—despite voicing her displeasure and continued pleadings to be taken home. *See Chatham*, 845

N.E.2d at 206 (the force need not be physical or violent, but may be implied from the circumstances). Accordingly, based on the totality of the evidence, we find that the State presented sufficient evidence to support that H.P. was compelled by force to submit to Jansen's touch.

## CONCLUSION

Based on the foregoing, we hold that the trial court properly convicted Jansen for sexual battery.

Affirmed.

Kirsch, J. and Robb, J. concur